**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **HLH TIMBER COMPANY LLC** | § | Case No. 21-90155 |
| xx-xxx6820 | § | |
| 154 FM 139, Joaquin, TX 75954 | § | |
| Debtor | § | Chapter 11 – **Subch. V** |

**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION PURSUANT TO**
**SECTION 1190 OF THE BANKRUPTCY CODE**

TO ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD, AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

**ARTICLE I**
**INTRODUCTION**

**Identity of the Debtor**

HLH Timber Company, LLC ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Lufkin Division on August 20, 2021. The Debtor manages and operates a timber harvesting and trucking business. This Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

**Explanation of Chapter 11**

Chapter 11 is the primary reorganization chapter under the Code. The Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

**Explanation of the Confirmation Process**

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan, and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote

1

for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

### Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor in order to make payments to its creditors as set forth in this Plan. Debtor seeks to confirm a consensual plan or reorganization so that all payments to creditors required under the Plan will be made directly by the Debtor to its creditors. Regardless, if the Debtor has to seek confirmation of this Plan pursuant to § 1191(b), then the Debtor will likewise seek approval from the Court to act as the payment administrator under the Plan pursuant to § 1194(b). Debtor asserts that it is in the creditors best interests for the Debtor to act as payment administrator under the Plan even if the Plan is confirmed pursuant to § 1191(b), as it will reduce administrative expenses, providing greater payout to general unsecured creditors. Debtor asserts that cause exists for the Court to allow the Debtor to act as payment administrator even if confirmed pursuant to § 1191(b).

### Voting Procedures

**Unimpaired Class**. Claimants in Class 1, 4, and 9 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Class**. The Class 2, 3, 5, 6, 7, and 8 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Class 2, 3, 5, 6, 7, and 8. Each holder of an Allowed Claim in Class 3, 5, 6, 7, and 8 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com. In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.

### Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan, or receive, or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interest of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive substantially less than if the Debtor was permitted to continue operating. Since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in Title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

    1.    **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

    2.    **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor for which (a) a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

    3.    **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor for which (a) a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

    4.    **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

    5.    **"Case"** shall mean this Chapter 11 Subchapter V case.

    6.    **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

    7.    **"Claimant"** shall mean the holder of a Claim.

8. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

9. **"Code"** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as enacted in 1978 and thereafter amended.

10. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

11. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

12. **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Lufkin Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

13. **"Creditor"** shall mean any person having a Claim against Debtor.

14. **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

15. **"Debtor"** shall mean HLH Timber Company, LLC.

16. **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Subchapter V Trustee or other entity or person as the Court mandates.

17. **"Effective Date"** The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan.

18. **"Entity"** shall include a person, estate trust, governmental unit and the United States Trustee.

19. **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

20. **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

21. **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, August 20, 2021.

22. **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

23. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

24.	**"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

25.	**"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

26.	**"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

27.	**"Subchapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

28.	**"Substantial Consummation"** shall occur upon the Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

29.	**"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

30.	**"Unsecured Claim"** shall mean any Allowed Claim, unencumbered by a lien or security interest, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

**ARTICLE III**
**REPRESENTATIONS**

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. INADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE

**IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.**

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

HLH Timber Company started operations in 2012, cutting and hauling timber to the mills. The company faced a significant decrease in revenue due to a downturn in mill production. Shortly thereafter, the COVID-19 pandemic hit and the company lost over half of its employees. Taking advantage of the opportunity afforded by bankruptcy reorganization, HLH Timber Company is offloading unneeded equipment to reduce operating costs and maintain profitability. HLH Timber Company plans to continue operating and servicing its customers while taking advantage of new opportunities to further its growth.

### Future Income and Expenses Under the Plan

The Debtor filed this case on August 20, 2021 to reorganize itself and its debts. Debtor anticipates having sufficient income to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "A" are projections of gross income, expenses and operating income for the next five years. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Heith Harper. Heith Harper will remain the president and owner of the company going forward.

## ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a timber harvesting and hauling business. The Debtor's assets include various equipment, trucks, trailers, and some office furniture.

A liquidation analysis of the Debtor's assets is attached hereto as Exhibit "B"

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into nine categories of Claimants.  These claimants will receive cash repayments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants – Allowed Administrative Claims of Professionals and Subchapter V Trustee (These claims are not impaired)** and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $25,000.00. The Class 1 Claimants are not impaired under this Plan.

**1-1 Texas Workforce Commission** filed an amended claim (Claim No. 18) in the amount of $1,012.06 as an Administrative Expense Claim pursuant to 11 U.S.C. § 503. The Debtor will pay the full amount of the Administrative Expense Claim on the Effective Date of the Plan.

**Class 2 Claimant – Priority Unsecured Tax Claim (This claim is impaired) Texas Workforce Commission** filed an amended claim in the amount of $5,345.48 (Claim No. 5). The Debtor will pay the full amount of the claim two equal payments. $2,672.74 will be paid on the Effective Date of the Plan, and the remaining $2,672.740 will be paid within 60 days of the Effective Date.

A failure by the reorganized Debtor to make a payment to the Texas Workforce Commission pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Claimant, the Claimant may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the reorganized Debtor and upon Debtor's attorney, Robert "Chip" Lane. The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, this Claimant, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

7

**Class 3 Priority Unsecured Tax Claim (This claim is impaired)** Shelby County filed an amended claim in the amount of $7,999.99 for 2020 and 2021 ad valorem taxes. The Debtor will pay the full amount of the claim at 6% interest over 6 months. The payments will be $1,356.76 per month with the first monthly payment being due and payable within 60 days after the Effective Date, unless this date falls in a weekend or federal holiday, in which case the payment will be due on the next business day.

.**Class 4 Claimant Secured Claims (These claims are not impaired)** U.S. Small Business Administration filed a proof of claim in the amount of $156,734.59 (Claim No. 1). This claim is secured by a blanket lien on all assets of the Debtor. The Debtor will pay the full claim of $156,734.59 pursuant to the original terms of the agreement. As set forth in the Note, the monthly payment will be $731.00. The first monthly payment is currently not due until June 2022. In the event the U.S. Small Business Administration further extends that initial payment date, the Debtor shall be permitted to wait until that later date.

**Class 5 Claimant Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**5-1 American State Bank fka Texas State Bank** filed a secured claim (Claim No. 7) in the amount of $193,132.61. Debtor will surrender all collateral in which American State Bank has a perfected lien. The Debtor will pay any deficiency balance, after the collateral is sold, as a general unsecured claim. If any deficiency claim exists, American State Bank shall amend its proof of claim that will inform Debtor of the deficiency amount that shall be paid as a general unsecured claim pursuant to Class 7 of the Plan.

**5-2 Caterpillar Financial Services Corporation** filed a secured claim (Claim No. 9) in the amount of $169,170.32. This claim is secured by a Prentice 2384D Log Loader and a KB50 Trailer. Debtor will pay the fair market value of the collateral of $93,200.00 at 5.25% interest per annum in monthly installments and the claim will be paid in full in 60 equal monthly payments. The payments will be $1,769.49 per month with the first monthly payment being due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion in the amount of $75,970.32 will be treated as a general unsecured claim.

**5-3 Kubota Credit Corporation, U.S.A.** filed a secured claim (Claim No. 19) in the amount of $25,299.85. Debtor will pay the full amount of the at 5.25% interest per annum in monthly installments and the claim will be paid in full in 60 equal monthly payments. The payments will be $480.34 per month with the first monthly payment being due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**5-4 TD Auto Finance** filed a secured claim (Claim No. 17) in the amount of $71,311.85. Debtor will pay the full amount of the claim at the contract rate of 3.94% interest per annum in monthly installments and the claim will be paid in full in 60 equal monthly payments. The payments will be $1,311.39 per month with the first monthly payment being due and payable 30

days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**Class 6 Claimant Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claims and the proposed treatment under the Plan.

**6-1 Shelby Savings Bank** filed a secured claim (Claim No. 14) in the amount of $35,793.99. This claim is secured by a 2015 Viking Log Trailer VIN #2216, 2015 Viking Log Trailer VIN #2231, and a 2007 Viking Log Trailer #2966. The Debtor will pay the full amount of the claim at 5.25% interest per annum in monthly installments and the claim will be paid in full in 60 equal monthly payments. The payments will be $679.58 per month with the first monthly payment being due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**6-2 Shelby Savings Bank** filed a secured claim (Claim No. 15) in the amount of $334,176.99. This claim is secured by a 2008 Prentice Log Loader, 2005 Skidder, 2014 Freightliner, 2015 Feller Buncher, and 110.75-acre tract in Shelby County (owned by Heith Harper, principal of the Debtor). On March 1, 2022, Shelby Savings Bank foreclosed on the 110.75-acre tract and received $387,000.00 at auction. There is therefore no deficiency balance and no amounts owing on this claim, and Shelby Savings Bank no longer has a security interest in the 2008 Prentice Log Loader, 2005 Skidder, 2014 Freightliner, 2015 Feller Buncher. No payments will be distributed to Shelby Savings Bank on this claim. Debtor will retain ownership of the 2008 Prentice Log Loader, 2005 Skidder, 2014 Freightliner, and 2015 Feller Buncher free and clear.

**6-3 Shelby Savings Bank** filed a secured claim (Claim No. 16) in the amount of $245,442.51. This claim is secured by a 2019 Weiler Feller Buncher and 2019 Weiler 221 Log Head. The Debtor will pay the fair market value of the collateral of $66,250.00 at 5.25% interest per annum in monthly installments and the claim will be paid in full in 60 equal monthly payments. The payments will be $1,257.82 per month with the first monthly payment being due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion in the amount of $179,192.51 will be treated as a general unsecured claim.

**Class 7 Claimants – General Allowed Unsecured Claims (These claims are impaired)** All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years with the first monthly payment being due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day, and continuing every year thereafter for the additional four (4) years remaining on this date. Debtor will distribute approximately $123,255.35 (American State Bank's unsecured claim is presently unknown) to the Class 7 General Allowed Unsecured creditor pool over the five (5) year term of the plan. The Debtor's Allowed Unsecured Claimants will receive 10% of their allowed claims under this plan, as shown below:

| Allowed General Unsecured Claim Creditors | Total Claim Amount | Total to be Paid during the 5-year Plan at **10%** of Total Claim | Monthly Distribution | Required Yearly Distribution |
|---|---|---|---|---|
| American Express National Bank | $44,963.37 | $4,496.35 | $74.93 | $899.27 |
| American State Bank | Unknown | Unknown | Unknown | Unknown |
| b1BANK | $812,161.00 | $81,216.10 | $1,353.60 | $16,243.22 |
| Caterpillar Financial Services Corporation | $75,970.32 | $7,597.03 | $126.61 | $1,519.41 |
| Center Tire | $15,506.72 | $1,550.67 | $25.84 | $310.13 |
| Chase Bank | $1,868.96 | $186.89 | $3.11 | $37.38 |
| HUBERT GLASS OIL CO. | $5,101.07 | $510.10 | $8.50 | $102.02 |
| John Deere Financial | $34,983.00 | $3,498.30 | $58.30 | $699.66 |
| Knighten Machine and Service Inc. | $17,937.11 | $1,793.70 | $29.89 | $358.74 |
| Lott Oil Company, Inc. | $11,224.45 | $1,122.45 | $18.70 | $224.49 |
| NAPA Logansport | $13,680.00 | $1,368.00 | $22.80 | $273.60 |
| Shelby Savings Bank Claim No. 16 (unsecured portion) | $179,192.51 | $17,919.25 | $298.65 | $3,583.85 |
| Toledo Automotive | $20,009.88 | $2,000.98 | $33.35 | $400.20 |

**Class 8 Claimant – Special Secured Claim (This claim is impaired)** B1 Bank filed a proof of claim (Claim No. 6) in the amount of $1,573,024.04. B1 Bank asserts it is fully secured by Debtor's personal property including an extensive list of vehicles. Debtor will surrender all of the equipment in which B1 Bank has a perfected lien, based on the values of B1 Bank's Appraisal (see attached Exhibit "C") totaling to $760,863.00. The unsecured amount of $812,161.00 will be paid as a general unsecured claim pursuant to Class 7 of the Plan.

**Class 9 Equity Interest Holders (Current Owners) (These claims are not impaired)** and shall be satisfied as follows: The current owner will receive no payments under the Plan; however, they will be allowed to retain their ownership in the Debtor.

## ARTICLE VII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.    Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that

informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtor deems appropriate.

    B.    <u>Binding Effect of Plan</u>.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is allowed in full, only in part, or disallowed in full, and whether or not a distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

    C.    <u>Vesting of Assets</u>.

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan.

    D.    <u>Discharge</u>.

        1.    <u>Consensual Plan</u>

A consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtor will not be discharged from any debt imposed by this Plan.

        2.    <u>Non-consensual Plan</u>

A non-consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor's Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

    E.    <u>Injunction Against Interference with Plan</u>.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy

Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtor.

F. <u>Payments under the Plan</u>.

If the Debtor confirms the Plan pursuant to § 1191(a) of the BankruptcyCode, Debtor shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim.

If the Debtor confirms the Plan pursuant to § 1191(b) of the BankruptcyCode, Debtor shall make all payments required under the Plan to the disbursing agent. "Disbursing Agent" shall mean the Subchapter V Trustee, or successor. The Disbursing Agent shall pay the Allowed Claims pursuant to the terms of this Plan as detailed in this Article:

(a) The Reorganized Debtor shall remit to the Disbursing Agent monthly all Disposable Income generated by the Reorganized Debtor on or before the tenth (10th) Business Day of each month via check, by wire transfer, or by any other means agreed to by the Disbursing Agent and the Reorganized Debtor.
(b) The Disbursing Agent will make his Distributions, pursuant to the terms of this Amended Plan, to the Allowed Claims on or before the fifteenth (15th) Business Day of each month.
(c) The Disbursing Agent shall be compensated for post-confirmation duties at his normal hourly rate and shall be paid quarterly from the Disposable Income. The amount of Disposable Income distributed or reserved to Claimants shall be the net of the Disposable Income remitted by the Reorganized Debtor to the Disbursing Agent. The Disbursing Agent's fees and expenses shall be disclosed in a quarterly report filed with the Court.
(d) Pursuant to the Plan Projections attached to this Plan, the Subchapter V Trustee, as the Disbursing Agent, will not distribute more than $50,000.00 in Disposable Income at one specific time. Therefore, the Subchapter V Trustee will not be required to obtain a separate or additional bond.

## ARTICLE VIII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

## ARTICLE IX
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan is feasible.

## ARTICLE X
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XI
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $25,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The Debtor also owes $156,734.59 to the U.S. Small Business Administration. The Debtor's assets include funds in the bank, the accounts receivable, trucks, trailers, and other equipment. Administrative creditors must be paid before unsecured debts, and therefore, a liquidation would result in a smaller distribution to the unsecured creditors. A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XIII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive, Suite 1150
Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE IX
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

Releases of Claims by Holders of Claims: Except as otherwise specifically provided for herein, upon the entry of the Confirmation Order (a) each Person that votes to accept the Plan or is presumed to have voted for the Plan pursuant to Section 1126(f) of the Bankruptcy Code; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the entry of the Confirmation Order, each Entity or Person, that has held, holds, or may hold a Claim or interest (hereinafter a "Release Obligor"), in consideration for the obligations of Debtor and Reorganized Debtor under the Plan and the case, shall have conclusively, absolutely unconditionally, irrevocably and forever, released and discharged Debtor from any Claim or claim of action existing as of the entry of the Confirmation Order arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to the Claim or claim for relief of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that this provision shall not release Debtor from any cause of action held by a Governmental entity existing as of the entry of the Confirmation Order based (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city or municipality, or (v) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security act of 1974, as amended.

## ARTICLE X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

# ARTICLE XII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Any causes of action that do arise, which include avoidance actions under Chapter 5, the Subchapter V Trustee will serve as the litigation trustee with authority to prosecute the causes of actions. The Subchapter V Trustee's fees and expenses will be paid by the reorganized debtor or from any recoveries.

Dated: March 11, 2022.

Respectfully submitted,

HLH Timber Company, LLC
By: */s/Heith Harper*
Heith Harper, Owner